FILED

2008 MAR 13  PM 12: 43

1  THOMAS P. O'BRIEN
   United States Attorney
2  LEE WEIDMAN
   Assistant United States Attorney
3  Chief, Civil Division
   GARY PLESSMAN
4  Assistant United States Attorney
   Chief, Civil Fraud Section
5  California State Bar No. 101233
        Room 7516, Federal Building
6       300 North Los Angeles Street
        Los Angeles, California, 90012
7       Telephone: (213) 894-2474
        Facsimile: (213) 894-2380
8       Email: gary.plessman@usdoj.gov

9  Attorneys for Plaintiff United States of America

10

11          **UNITED STATES DISTRICT COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**

12
   UNITED STATES OF AMERICA,
13                                      Case No.  **CV08-01711** MMM (RZx)
         Plaintiff,
14
                v.                      **COMPLAINT FOR CIVIL**
15                                      **PENALTIES, PERMANENT**
   VALUECLICK, INC.,                    **INJUNCTION, AND OTHER**
16 HI-SPEED MEDIA, INC., and            **EQUITABLE RELIEF**
   E-BABYLON, INC.,
17
         Defendants.
18

19       Plaintiff, the United States of America, acting upon

20  notification and authorization to the Attorney General by the

21  Federal Trade Commission ("FTC" or "Commission"), pursuant to

22  Section 16(a)(1) of the Federal Trade Commission Act ("FTC Act"),

23  15 U.S.C. § 56(a)(1), for its complaint alleges:

24       1.   Plaintiff brings this action under Sections 5(a),

25  5(m)(1)(A), 13(b), 16(a) and 19 of the FTC Act, 15 U.S.C.

26  §§ 45(a), 45(m)(1)(A), 53(b), 56(a), and 57b, and under Section

27  7(a) of the Controlling the Assault of Non-Solicited Pornography

28  and Marketing Act of 2003 ("CAN-SPAM" or the "CAN-SPAM Act"),

Complaint                    Page 1 of 18

15 U.S.C. § 7706(a), to obtain monetary civil penalties, a permanent injunction, and other equitable relief for defendants' violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and Section 5(a) of CAN-SPAM, 15 U.S.C. § 7704(a).

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355 and 15 U.S.C. §§ 45(m)(1)(A), 53(b), 56(a) and 57b.  This action arises under 15 U.S.C. §§ 45(a) and 7706(a).

3.  Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), 1395(a), and 15 U.S.C. § 53(b).

## DEFENDANTS

4.  Defendant ValueClick, Inc. ("ValueClick") is a Delaware corporation with its principal office or place of business at 30699 Russell Ranch Road, Suite 250, Westlake Village, CA 91361. ValueClick resides in the Central District of California and transacts business within this District and throughout the United States.  ValueClick directs, formulates and controls the practices of, and shares common officership with, the other named Defendants, which are wholly-owned subsidiaries of ValueClick.

5.  Defendant Hi-Speed Media, Inc. ("Hi-Speed Media") is a California corporation with its principal office or place of business at 30699 Russell Ranch Road, Suite 250, Westlake Village, CA 91361.  Hi-Speed Media resides in the Central District of California and transacts business within this District and throughout the United States.

6.  Defendant E-Babylon, Inc. ("E-Babylon") is a California corporation with its principal office or place of business at 30699 Russell Ranch Road, Suite 250, Westlake Village, CA 91361.

E-Babylon resides in the Central District of California and transacts business within this District and throughout the United States.

7.   Defendant ValueClick operates its lead generation business through its wholly-owned subsidiary Hi-Speed Media.   Lead generation is the process by which ValueClick connects consumers to advertisers seeking to sell goods or services.   Hi-Speed Media operates or controls, either directly or through other subsidiaries, a variety of websites including GenerousGenie.com and GiveAwayCafe.com.   Defendant ValueClick also operates under the names ValueClick Media and PriceRunner USA.

8.   Since July 2004, Defendants have formulated, directed, controlled, or participated in the acts and practices set forth in this complaint.

### DEFINITIONS

9.   "**Electronic mail message**" (or "**email**") means a message sent to a unique email address.   15 U.S.C. § 7702(6).

10.   "**Electronic mail address**" means a destination, commonly expressed as a string of characters, consisting of a unique user name or mailbox (commonly referred to as the "local part") and a reference to an Internet domain (commonly referred to as the "domain part"), whether or not displayed, to which an email message can be sent or delivered.   15 U.S.C. § 7702(5).

11.   "**Commercial electronic mail message**" means any email message the primary purpose of which is the commercial advertisement or promotion of a commercial product or service (including the content on an Internet website operated for commercial purposes).   15 U.S.C. § 7702(2).

12.   "**Initiate**," when used with respect to a commercial email

Complaint                        Page 3 of 18

message, means to originate or transmit such message or to procure the origination or transmission of such message.   15 U.S.C. § 7702(9).

13.   **"Landing page"** means, in online marketing, a specific web page that a visitor reaches after clicking a link or advertisement. This page usually showcases content that is an extension of the link or ad.

14.   **"Procure,"** when used with respect to the initiation of a commercial email message, means intentionally to pay or provide other consideration to, or induce, another person to initiate such a message on one's behalf.   15 U.S.C. § 7702(12).

15.   **"Protected computer"** means a computer which is used in interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States.   15 U.S.C. § 7702(13); 18 U.S.C. § 1030(e)(2)(B).

16.   **"Sender"** means a person who initiates a commercial email message and whose product, service, or Internet website is advertised or promoted by the message.   15 U.S.C. § 7702(16).

### DEFENDANTS VALUECLICK'S AND HI-SPEED MEDIA'S
### MARKETING PRACTICES

17.   Since January 2005, and continuing to the present, Defendants ValueClick and Hi-Speed Media (hereinafter, "the lead generation Defendants"), in connection with promotions and advertisements on their websites, have offered consumers purportedly free merchandise, such as iPods, laptop computers, and Visa gift cards.

18.   The lead generation Defendants advertise and market their offers through email and Web-based ads.   The lead generation

Complaint                      Page 4 of 18

Defendants' emails contain subject lines such as: "Free PS3 for survey"; "let us buy you a 42 inch plasma tv! Just type in your zip code"; "we're giving away a Visa gift card pending participation in our presidential survey"; and "Free Apple iPhone for Daniel."  The lead generation Defendants' Web-based ads contain similar representations:  "CONGRATULATIONS! Select your FREE Plasma TV."  (Such products and items are referred to herein as "promised free merchandise.")

19.  Many of the lead generation Defendants' emails and Web-based ads represent, expressly or by implication, that the consumer viewing the message has won a contest, or has been specially selected to receive a gift or prize.

20.  The lead generation Defendants' emails and Web-based ads contain links that, when clicked on, take one to a "landing page" operated by the lead generation Defendants or their affiliates. Each landing page recapitulates and expands upon the lead generation Defendants' initial promised free merchandise offer.

21.  The lead generation Defendants do not clearly and conspicuously disclose that to obtain the promised free merchandise one must incur expenses or other obligations.  A consumer must accept (and often pay for) – in the lead generation Defendants' parlance, "complete" or "participate in" – a certain number of goods or services promoted by third-parties to qualify for the promised free merchandise that the lead generation Defendants promote in their emails and Web-based ads.  Moreover, the lead generation Defendants do not clearly and conspicuously disclose the costs and obligations associated with participating in third-party promotions, such as applying and qualifying for credit cards or automobile loans.

Complaint                    Page 5 of 18

22.  On each landing page, the lead generation Defendants request the consumer to enter his or her email address, followed by his or her name and mailing address.  Once the consumer has submitted his or her personal information, the lead generation Defendants lead the consumer through a series of web pages containing advertisements for various goods and services from third parties.  Unbeknownst to the consumer, this is only an introductory tier of "optional" advertisements and offers, after which are three additional tiers of offers that the consumer will have to navigate before he or she can qualify for the promised free merchandise.  "Optional" offers do not qualify the consumer for the promised free merchandise.

23.  After the consumer navigates the lead generation Defendants' "optional promotions" – often so multitudinous as to take up scores of consecutive computer screens, each with multiple offers – he or she eventually reaches a link that, when clicked, takes the consumer to the first of three tiers of offers in which the consumer must participate to obtain the promised free merchandise.

24.  The lead generation Defendants group the tiers of offers that qualify the consumer for the promised free merchandise into three categories:  Silver, Gold, and Platinum.  In each category, there are numerous offers.  The lead generation Defendants require the consumer to "participate in" multiple offers from each category to obtain the promised free merchandise.

25.  Clicking on each offer reveals what the consumer must do to "participate in" the offer.  In some cases, "participating in" an offer entails paying money or incurring some other detriment, such as qualifying and applying for credit cards.  The lead

generation Defendants require the consumer to participate in multiple offers before he or she can progress to the next tier of offers.

26.  Some of the offers have free-trial periods, but require the consumer to participate for a minimum period of time to qualify for the lead generation Defendants' promised free merchandise thereby causing consumers to incur costs they cannot recover.  In some instances, the minimum period is longer than the free-trial period.  Moreover, many such offers contain negative option components in which the consumer who does not cancel within the free trial period will be billed automatically.

27.  In some instances, the lead generation Defendants require the consumer to solicit up to five friends to participate in the lead generation Defendants' program as a condition to awarding the consumer with the promised free merchandise.  If all the friends do not complete all of their required offers, the lead generation Defendants do not award the consumer with the promised free merchandise.

28.  In many instances, the consumer stops trying to qualify for the lead generation Defendants' promised free merchandise, either because of the cost involved or the time and effort required.  Although the consumer has expended money or incurred other obligations in pursuit of the lead generation Defendants' promised free merchandise, because he or she has not completed all of the lead generation Defendants' required third-party promotions, the consumer does not receive the promised free merchandise.

29.  In most instances, it is impossible for the consumer to qualify for the lead generation Defendants' promised free

merchandise without spending money.

## DEFENDANTS VALUECLICK'S AND HI-SPEED MEDIA'S
## EMAIL PRACTICES

30.   Since at least January 1, 2005, and continuing to the present, the lead generation Defendants have initiated the transmission of commercial email messages to protected computers. The primary purpose of these commercial email messages has been the commercial advertisement or promotion of Internet websites operated for a commercial purpose by the lead generation Defendants.

31.   The lead generation Defendants are "initiators" with respect to an email message when they have either originated or transmitted a message themselves or have procured the origination or transmission of a message through payments or other consideration, or inducements, to others.

32.   The lead generation Defendants are "senders" with respect to an email message when they have initiated a message and it is the lead generation Defendants' websites that are being advertised or promoted by such message.

33.   In numerous instances, to induce consumers to open and read their commercial emails, the lead generation Defendants have initiated commercial email messages that contain subject headers that misrepresent the content or subject matter of the message, including, but not limited to, false representations that consumers have been specially selected to receive free products or services.

## DEFENDANTS VALUECLICK'S, HI-SPEED MEDIA'S, AND E-BABYLON'S
## PRACTICES REGARDING INFORMATION SECURITY AND SENSITIVE CUSTOMER
## FINANCIAL INFORMATION

Complaint                          Page 8 of 18

34.   Since at least 2004, Defendant ValueClick, and its wholly-owned subsidiary, Defendant Hi-Speed Media, have marketed and sold consumer products through the Internet at the following sites ("HSM sites"), which together form the ValueClick E-Commerce Network: HotProductOutlet.com, InkBlvd.com, Jevene.com (now known as Oasiderm.com), Life-visage.com, and Yourinkstation.com.

35.   In June 2005, in order to expand its online business, Defendant ValueClick acquired as a wholly-owned subsidiary Defendant E-Babylon, an e-commerce company that marketed and sold printer accessories such as ink jet and toner cartridges. Defendant ValueClick added E-Babylon's e-commerce business to the existing Hi-Speed Media business and the associated websites to the ValueClick E-Commerce Network.  As a result, Defendants ValueClick, Hi-Speed Media, and E-Babylon marketed and sold consumer products through the following additional sites acquired with Defendant E-Babylon ("E-Babylon sites"): 00InkJet.com, 007inkjets.com, 111inkjets.com, 123digitalpcs.com, 123inkjets.com, 123LaserToner.com, 411InkJets.com, 4YourInkPrinter.com, 911InkJets.com, ABCInkJets.com, DiscoverInk.com, FreeCartridges.com, HappyInks.com, IdirectShopping.com, Ink2All.com, InkJet4Sale.com, InkJetBroker.com, InkJetOrder.com, MaxInkJets.com, OrderMyInk.com, OutofInk.com, PetersInkJets.com, ProInkJets.com, SpectrumInks.com, and WhenUPrint.com.

36.   In order to make purchases from any of these websites, consumers must pay using a credit or debit card.  To complete these transactions, consumers must provide personal information, including the consumer's first and last name, billing address, shipping address, phone number, fax number, email address, password, order identification number, credit card number, and

credit card expiration date. Defendants ValueClick, Hi-Speed Media, and E-Babylon store this information within databases that support or connect to the websites.

37.   In addition to these types of information, Defendants' HSM sites and some of the E-Babylon sites also collected and retained in databases the three-digit credit card verification codes ("CVV2 codes") provided by consumers in order to complete transactions on these websites. CVV2 codes, which are printed on the back of the cards, are particularly sensitive because they are used to verify credit card transactions when the cards are not present, such as in online or telephone transactions. Possession of CVV2 code information would make it significantly easier for identity thieves to use stolen credit card information for fraudulent purchases.

38.   Since July 2004, Defendants ValueClick and Hi-Speed Media have disseminated or have caused to be disseminated a privacy policy on the HSM sites, including but not necessarily limited to the attached Exhibit A, containing the following statements:

> The ValueClick Network employs industry standard security measures to ensure the security of all data. Any data that is stored on ValueClick's servers is treated as proprietary and confidential and is not available to the public. ValueClick also encrypts sensitive information such as passwords and financial data. ValueClick has an internal security policy with respect to the confidentiality of customer and other data, allowing access only to those employees or third parties who need to know such information for the purpose of effectively delivering ValueClick products and services by means of user login and password requirements. The ValueClick Network routinely evaluates its data security practices to identify security threats or opportunities for improvement. (Exhibit A, www.inkblvd.com Privacy Policy, July 7, 2004)

39.   From the time of the acquisition of Defendant E-Babylon

Complaint                    Page 10 of 18

until July 26, 2006, Defendants ValueClick, Hi-Speed Media, and E-Babylon disseminated or caused to be disseminated a privacy policy on the E-Babylon sites, including but not necessarily limited to the attached Exhibit B, containing the following statements:

> At our site you can be assured that your Personally Identifiable Information is secure, consistent with current industry standards. ... In addition, your Personally Identifiable Information resides on a secure server that only selected key personnel and contractors have access to via password. We encrypt your Personally Identifiable Information and thereby prevent unauthorized parties from viewing such information when it is transmitted to us. (Exhibit B, www.123inkjets.com Privacy Policy)

40. On July 26, 2006, Defendants ValueClick, Hi-Speed Media, and E-Babylon amended the privacy policies on the E-Babylon sites to make them identical to the privacy policies on the HSM sites, with the same statements regarding security and encryption as are described in Paragraph 39.

41. From at least July 2004 to November 2006 for the HSM sites, and from the acquisition of E-Babylon to November 2006 for the E-Babylon sites, Defendants ValueClick, Hi-Speed Media, and E-Babylon did not encrypt sensitive information consistent with industry standards. Instead, Defendants stored sensitive customer information collected through the HSM sites in a database without any encryption, and Defendants stored sensitive customer information collected through the E-Babylon sites in a database using a nonstandard, proprietary form of encryption. This latter form of encryption did not use the type of extensively-tested algorithms found in industry-standard systems, but instead utilized a simple alphabetic substitution system that was subject to significant vulnerabilities.

42. Between at least June 2005 and late 2006, the E-Babylon

sites were vulnerable to commonly known or reasonably foreseeable attacks from third parties attempting to obtain access to customer information stored in Defendants' databases, including but not limited to, web-based application attacks such as "Structured Query Language" (SQL) injection attacks.  Such attacks occur when an attacker enters certain characters or commands in the address (or URL) bar of a standard web browser in order to manipulate a web application and thereby gain access to information contained in databases supporting the application.  Here, the vulnerability affected databases containing consumer credit card information submitted to E-Babylon sites, which was maintained in a nonsecure form.  During the relevant period, SQL injection attacks were a well-known and well-publicized form of hacking attack, and solutions to prevent such attacks were readily-available and inexpensive.

## VIOLATIONS OF THE FTC ACT

43.  As set forth below, Defendants have violated Section 5(a) of the FTC Act in connection with advertising, offering, marketing, and promoting of advertised offers.

## COUNT I

44.  Through the means described in Paragraphs 17-29, Defendants ValueClick and Hi-Speed Media have represented, expressly or by implication, that Defendants ValueClick's and Hi-Speed Media's advertised offers are without cost or obligation.

45.  Defendants ValueClick and Hi-Speed Media have failed to disclose or to disclose adequately to consumers the material terms and conditions of their program, including:

      a.    that consumers must pay money or other consideration to participate in Defendants

ValueClick's and Hi-Speed Media's program; and

b.   the costs and obligations for participating in Defendants ValueClick's and Hi-Speed Media's program.

46.   As a result of the representation set forth in Paragraph 44, Defendants ValueClick's and Hi-Speed Media's failure to disclose or to disclose adequately the material information set forth in Paragraph 45 is deceptive, and violates Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT II

47.   Through the means described in Paragraphs 38-40, Defendants ValueClick, Hi-Speed Media, and E-Babylon have represented, expressly or by implication, that they encrypt the sensitive information they collect through their websites consistent with industry standards.

48.   In truth and in fact, these Defendants have not encrypted the sensitive information they collect through their websites consistent with industry standards.  In particular, Defendants ValueClick and Hi-Speed Media did not encrypt sensitive customer information for customers making purchases on HSM sites, and Defendants ValueClick, Hi-Speed Media, and E-Babylon encrypted sensitive customer information for customers making purchases on E-Babylon sites using only an insecure form of alphabetic substitution that is not consistent with, and less protective than, industry-standard encryption.  Therefore, the representation set forth in Paragraph 47 was false or misleading and constituted a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT III

Complaint                          Page 13 of 18

49.  Through the means described in Paragraphs 38-40, Defendants ValueClick, Hi-Speed Media, and E-Babylon have represented, expressly or by implication, that they implemented reasonable and appropriate measures to protect against unauthorized access to the sensitive personal information they obtained from customers.

50.  In truth and in fact, these Defendants did not implement reasonable and appropriate measures to protect against unauthorized access to the sensitive personal information they obtained from customers.  In particular, the E-Babylon sites of Defendants ValueClick, Hi-Speed Media, and E-Babylon and the associated databases were vulnerable to a commonly known and reasonably foreseeable type of attack known as an SQL injection, which, if exploited, would have allowed access by unauthorized individuals to sensitive customer financial information. Moreover, because this information was stored without effective encryption, it was particularly vulnerable to compromise. Therefore, the representation set forth in Paragraph 49 was false or misleading and constituted a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATION OF THE CAN-SPAM ACT

51.  The CAN-SPAM Act, 15 U.S.C. § 7701 et seq., became effective on January 1, 2004, and has since remained in full force and effect.

52.  Section 5(a)(2) of CAN-SPAM, 15 U.S.C. § 7704(a)(2), states:

> It is unlawful for any person to initiate the transmission, to a protected computer, of a commercial electronic mail message, if such person has actual knowledge, or knowledge fairly implied on the basis of objective

circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message (consistent with the criteria used in enforcement of section 5 of the Federal Trade Commission Act (15 U.S.C. 45)).

53.   Section 7(e) of CAN-SPAM, 15 U.S.C. § 7706(e), states that in any action to enforce compliance through an injunction with Section 5(a)(2) and other specified sections of CAN-SPAM, the FTC need not allege or prove the state of mind required by such sections.

54.   Section 7(a) of the CAN-SPAM Act states:

[T]his Act shall be enforced by the [FTC] as if the violation of this Act were an unfair or deceptive act or practice proscribed under section 18(a)(1)(B) of the [FTC Act] (15 U.S.C. 57a(a)(1)(B)).

## COUNT IV

55.   Through the means described in Paragraphs 30-33, Defendants ValueClick and Hi-Speed Media have initiated the transmission, to protected computers, of commercial email messages that contained subject headings that would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

56.   Therefore, Defendants ValueClick's and Hi-Speed Media's acts or practices violate Section 5(a)(2) of CAN-SPAM, 15 U.S.C. § 7704(a)(2).

## CONSUMER INJURY

57.   Consumers throughout the United States have been injured as a result of Defendants' unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue

to injure consumers and to harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

58.   Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and other ancillary relief to prevent and remedy any violation of any provision of law enforced by the FTC.

59.   Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, and as implemented by 16 C.F.R. § 1.98(d) (2007), authorizes this Court to award monetary civil penalties of not more than $11,000 for each violation of CAN-SPAM.  Defendants ValueClick's and Hi-Speed Media's violations of CAN-SPAM were committed with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

60.   This Court, in the exercise of its equitable jurisdiction, may award ancillary relief to remedy injury caused by Defendants' violations of CAN-SPAM and the FTC Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court, as authorized by Sections 5(a), 5(m)(1)(A), 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), and 57b, and pursuant to its own equitable powers:

1.   Enter judgment against Defendants and in favor of Plaintiff for each violation alleged in this complaint;

2.   Award Plaintiff monetary civil penalties from Defendants ValueClick and Hi-Speed Media for every violation of CAN-SPAM;

3.   Award Plaintiff such relief as the Court finds necessary to redress injury to consumers resulting from Defendants'

violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), including, but not limited to, rescission of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

4.   Enter a permanent injunction to prevent future violations of the FTC Act and CAN-SPAM by Defendants;

5.   Order Defendants to pay the costs of this action; and

6.   Award Plaintiff such other and additional relief as the Court may determine to be just and proper.

Complaint                          Page 17 of 18

Dated: _March 12_ , 2008

1

2   OF COUNSEL:

3   LOIS C. GREISMAN
    Associate Director for
4   Marketing Practices
    FEDERAL TRADE COMMISSION

5
    JOEL WINSTON
6   Associate Director for
    Privacy and Identity
7   Protection
    FEDERAL TRADE COMMISSION

8
    Stephen L. Cohen
9   Ethan Arenson
    Burke W. Kappler
10  Attorneys
    Federal Trade Commission
11  600 Pennsylvania Ave., N.W.,
    Washington, DC  20580
12  PHONE:  202-326-3222; 326-
    2204; 326-2043
13  FAX:  202-326-3395; 326-3768

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA
JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
Civil Division
U.S. DEPARTMENT OF JUSTICE

THOMAS P. O'BRIEN
United States Attorney

LEE WEIDMAN
Assistant United States Attorney
Chief, Civil Division

GARY PLESSMAN
Assistant U.S. Attorney
Chief, Civil Fraud Section
California State Bar No. 101233
Room 7516, Federal Building
300 North Los Angeles Street
Los Angeles, California, 90012
Telephone: (213) 894-2474
Facsimile: (213) 894-2380
Email: gary.plessman@usdoj.gov

EUGENE M. THIROLF
Director,
KENNETH L. JOST
Deputy Director,
Office of Consumer Litigation

JOHN W. BURKE
Trial Attorney
Office of Consumer Litigation
U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
PHONE: 202-353-2001
FAX: 202-514-8742
josh.burke@usdoj.gov

Complaint               Page 18 of 18

# EXHIBIT A

Page 1 of 5

7/7/2004

InkBlvd.com | Save up to 85% on Inkjet Cartridges & Laser Toners

**InkBlvd**

Save up to 85%
on Inkjet cartridges & laser toners!

Browse

Home   About Us   Contact Us   FAQs

**Inkjet Cartridges**
- » Apollo
- » Apple
- » Brother
- » Canon
- » Compaq
- » Epson
- » HP
- » IBM
- » Lexmark
- » Oki
- » Panasonic
- » Samsung
- » Sharp
- » Stylus
- » Xerox

**Laser Toners**
- » Apple
- » Brother
- » Canon
- » DEC
- » Decision
- » HP
- » IBM
- » Lexmark
- » Nashuatec
- » Olivetti
- » Unisys
- » Wang
- » Xerox

View Cart | Checkout

[Search]

Privacy Policy

**Version: July 1, 2004**

This page set forth the privacy policies and practices of InkBlvd and its affiliated companies within the ValueClick E-Commerce Network ("ValueClick Network" "ValueClick" "we" or "us").

Please read this privacy policy carefully since by visiting a ValueClick Network site and sharing information with one our companies you agree to be bound by the terms and conditions of this Privacy Policy unless you offer different terms which are accepted by ValueClick, Inc. in writing. For more information about the ValueClick Network and other ValueClick companies please visit www.ValueClick.com.

STATEMENT OF RESPONSIBLE ONLINE MARKETING

The ValueClick Network's information usage practices are based on two beliefs: first, that protecting user privacy is essential to the growth and prosperity of the Internet; second, that a personalized web experience can provide significant benefits to Internet end users if done properly. In accordance with these beliefs, the ValueClick Network creates opportunites for advertisers and consumers in revolutionary ways without compromising individual privacy.

I. INFORMATION WE COLLECT: INDIVIDUAL INTERNET CONSUMERS

A. Personally Identifiable Information (PII).
The ValueClick Network sites are designed to offer Internet consumers with a variety of valuable products. When you place an order with a ValueClick Network site, you will be asked to provide your name, address, zip code, email address and billing information. This information is used to process your order and we cannot do so without it. The ValueClick Network will never request or collect data regarding medical/health conditions; racial or ethnic origin; political, religious or philosophical beliefs or affiliations; trade union membership or sex life.

The ValueClick Network may use your PII for customer service, to provide you with information that you may request, to customize your experience on the Site, and to contact you when necessary in connection with transactions entered into by you on the Site. We also may use your personal information for internal business purposes, such as analyzing and managing our business or combine the information we have gathered about you with informaton from other sources.

http://www.inkblvd.com/index.php?page=privacy

EXHIBIT A                    19                    VC - 001915

Case 2:08-cv-01711-MMM-RZ Document 1 Filed 03/13/08 Page 21 of 34 Page ID #:21

InkBlvd.com | Save up to 85% on Inkjet Cartridges & Laser Toners

Unless you tell us not to, we may use your personal information to contact you about offers or promotions from the ValueClick Network and selected third parties we think you would be interested in.

B. Non-Personally Identifiable Information (PII).

When you visit a ValueClick Network site, we send a cookie and/or gif file ("Cookies") to assign an anonymous, unique identifier to the end user's Internet browser. Cookies are small data files commonly used on the Internet to help optimize and personalize the Internet end user experience and identify repeat visitors to websites. For example, Cookies enable ValueClick to track your shopping cart and retrieve your information and preferences when you return to our site.

For each visitor to our website, our Web server automatically recognizes only the visitor's IP address. We use your IP address to help diagnose problems with our server and to administer our website. Upon visiting our website, we assign each visitor a unique ID that is used to track visitor traffic patterns within our website. We also collect aggregate and user-specific information on what pages visitors access or visit. We reserve the right to retain all website traffic reporting data as long as may be reasonably necessary for accounting and auditing purposes.

II. INFORMATION SHARING

The ValueClick Network may use third party vendors (e.g., credit card processors) to help us operate our business and ValueClick Network sites or administer activities on our behalf. We may share your information with these third parties for those limited purposes. Any third-party vendor so used has agreed to protect the confidentiality of information provided by ValueClick.

The ValueClick Network and/or our marketing partners may enhance and/or merge PII about consumers who have opted-in to receive marketing communications with commercially-available third party data collected from marketing programs are relevant to their interests. In the event we enhance and/or merge such personally identifiable information with data collected from other sources, we will take reasonable steps to maintain the integrity and quality of that information.

The ValueClick Network may share PII (including information that has been enhanced with information from other sources) with advertisers, third party marketers, our affiliated entities for their online and/or offline marketing programs or in connection with the sale, merger, consolidation, change in control, transfer of substantial asset, reorganization or liquidation of any of the ValueClick Network companies. While ValueClick strongly encourages clients and partners to adopt responsible approaches to online marketing, ValueClick is not responsible for the information practices of clients or their partners. The collection, use, and disclosure of information by clients and partners are subject to their respective privacy policies, which may differ from ValueClick's policy.

The ValueClick Network may release account and any other personal information when we believe release is appropriate to respond to a subpoena or otherwise comply with the law; enforce or apply our Terms and Conditions and other agreements; or protect the rights, property, or safety of ValueClick or others. This includes exchanging

http://www.inkblvd.com/index.php?page=privacy

EXHIBIT A

20

VC - 001916

7/7/2004

InkBlvd.com | Save up to 85% on Inkjet Cartridges & Laser Toners

Page 3 of 5

Information with other companies and organizations for fraud protection.

III. CONSUMER CHOICE AND ACCESS

If at anytime you no longer wish to receive offers from a InkBlvd, you may "unsubscribe" through this website or by using the unsubscribe option within any promotional offer. In compliance with the CAN-SPAM Act, you will be removed entirely from our email list and will no longer receive offers from us. If you have registered or submitted PII under more than one email account, you must submit separate unsubscribe requests from each account.

The Cookies we use do not have an "opt-out" option, yet you still have the option of blocking the use of cookies by changing a setting in your Internet browser. Please see your browser supplier's website for details on how to do this.

The ValueClick Network uses software and third-party sources to validate the accuracy of PII provided and/or filter suspicious data. You may change, correct or update your information by email by contacting customerservice@InkBlvd.com. Changing or deleting your information or otherwise opting-out of receipt of communications from the ValueClick Network will change or delete the data only in our database for purposes of transacting future business on our sites and for managing future communications from InkBlvd. These changes and deletions will not change or delete information already collected as part of a particular transaction.

IV. SECURITY

The ValueClick Network employs industry standard security measures to ensure the security of all data. Any data that is stored on ValueClick's servers is treated as proprietary and confidential and is not available to the public. ValueClick also encrypts sensitive information such as passwords and financial data. ValueClick has an internal security policy with respect to the confidentiality of customer and other data, allowing access only to those employees or third parties who have a need to know such information for the purpose of effectively delivering ValueClick products and services by means of user login and password requirements. The ValueClick Network routinely evaluates its data security practices to identify security threats or opportunities for improvement.

No transmission of data over the Internet is guaranteed to be completely secure. It may be possible for third parties not under the control of ValueClick to intercept or access transmissions or private communications unlawfully. While we strive to protect your PII, ValueClick cannot ensure or warrant the security of any information you transmit to us. You acknowledge and assume this risk when communicating with a ValueClick Network company.

V. CONSENT AND CHANGES

The ValueClick Network may find it necessary or be legally obligated to update this Privacy Policy from time to

http://www.inkblvd.com/index.php?page=privacy

7/7/2004

EXHIBIT A

21

VC - 001917

InkBlvd.com | Save up to 85% on Inkjet Cartridges & Laser Toners

Page 4 of 5

time. When we do, we will post those changes on this page and update the effective date so that you are always aware of the information we collect, how we use it, and under what circumstances we disclose it. Except as otherwise required by law, modifications to this Privacy Policy will not affect the privacy of data collected by ValueClick prior to the effective date of the policy change.

VI. CHILDREN'S PRIVACY AND SPAM

The ValueClick Network is very sensitive to the issue of children's privacy and makes every effort to protect the privacy of children using the Internet. ValueClick's web site, products, and services are not developed for or directed at children. Our policy is not to permit anyone under the age of 13 to do business with us. If you believe your child has provided the ValueClick Network with any personally identifiable data by registering at a ValueClick web site, please contact privacy@InkBlvd.com to have them removed.

The ValueClick Network is committed to proper Internet practices and full compliance with the CAN-SPAM Act of 2003 (15 U.S.C. § 7701). It is our policy to prohibit the sending of unsolicited or "Spam" email by ValueClick or any of its marketing partners.

Please note that under the CAN-SPAM Act, an advertiser is required to provide an opt-out mechanism for consumers to unsubscribe from future emails about the advertiser. Although not required to by law, many email marketers also include an opt-out mechanism to enable consumers to be removed from their mailing list. This has caused some confusion for consumers in opting out. The table below clarifies which opt-out mechanism you should use.

| To receive no further emails . . . | Opt-Out Mechanism to Use |
|---|---|
| about the advertiser | Advertiser's |
| from the email marketing company | Marketer's |
| from the advertiser or email marketing company | Both |

VII. DATA PROCESSING

You acknowledge that InkBlvd operates in the United State and agree to (i) permit InkBlvd to transmit and use your User information anywhere necessary, including across international boundaries, to affect the services and transactions provided by this Site; and (ii) that such use by InkBlvd shall be subject to the terms and conditions stated in this Privacy Statement and our Terms and Conditions.

http://www.inkblvd.com/index.php?page=privacy

7/7/2004

EXHIBIT A

22

VC - 001918

InkBlvd.com | Save up to 85% on Inkjet Cartridges & Laser Toners

Page 5 of 5

7/7/2004

**VIII. NETWORK ADVERTISING INITIATIVE**

ValueClick, Inc. is a member of the Network Advertising Initiative ("NAI"). The NAI is a group of third party network advertisers committed to increasing consumer confidence and contributing to the growth of electronic commerce. We, along with other members of the NAI, are committed to providing consumers with a clear explanation of what data we collect, how we use them, and why the use of data can benefit consumer's experience online. For more information about the Network Advertising Alliance please go to http://networkadvertising.org/.

**IX. LIMITATION OF LIABILITY, THIRD PARTY INFORMATION & LANGUAGE**

YOU UNDERSTAND AND AGREE THAT ANY DISPUTE OVER PRIVACY IS SUBJECT TO THE TERMS AND CONDITIONS OF THIS PRIVACY POLICY AND OUR TERMS AND CONDITIONS (INCLUDING LIMITATIONS ON DAMAGES, AND ARBITRATION OF DISPUTES). YOU AGREE THAT INKBLVD'S LIABILITY FOR ANY BREACH OF THIS PRIVACY POLICY SHALL BE LIMITED TO THE VALUE OF THE TRANSACTIONS OR SERVICES PROVIDED TO YOU BY INKBLVD TO THE EXTENT SUCH CLAIM IS NOT OTHERWISE BARRED BY OUR TERMS AND CONDITIONS.

You also agree that you have provided notice to, and obtained consent from, any third party individuals whose personal data you supply to InkBlvd with regard to: (a) the purposes for which such third party's data has been collected; (b) the intended recipients or categories of recipients of the third party's personal data; (c) which of the third party's data are obligatory and which data, if any, are voluntary; and (d) how the third party can access and, if necessary, rectify the data held about them. It is the express will of the parties that this agreement and all related documents have been drawn up in English. C'est la volonté expresse des parties que la présente convention ainsi que les documents qui s'y rattachent soient rédigés en anglais.

**CONTACT US**

For more information or if you have questions or concerns regarding the ValueClick Network Privacy Policy, please send an email to privacy@InkBlvd, or you can send correspondence to the following address: InkBlvd, Privacy Officer, 11250 Ventura Blvd Suite 1750, Los Angeles, CA 91403.

Copyright © 2004 InkBlvd.com. All rights reserved.

http://www.inkblvd.com/index.php?page=privacy

EXHIBIT A

23

VC - 001919

**EXHIBIT B**

Printer Ink Cartridges, Laser Toners, Ribbons and Inkjet Printer Cart...   file:///E:/Request%20No%205%20and%206/Printer%20Ink%20Cart...



**Your Privacy Rights**

This Privacy Policy discloses the privacy practices for 123inkjets.com website and various related services (together referred to as the site). **As the provider of this, we are committed to protecting your privacy online. In a nutshell our privacy policy states that we will never rent, sell or lease your email address to anyone without your permission. So, please read the information below to learn the following regarding your use of this site.**

123inkjets.com has partnered with third parties to offer our customers and Site visitors a variety of products and services. Other than as set forth herein, we will not sell or lease your email address to third party advertisers to solicit you directly. However 123inkjets.com may share Personally Identifiable Information (but never your email address) with our marketing partners in order for them to offer you additional products and services that 123inkjets.com believes may be of interest to you. Although we only work with third parties whom we believe to be reputable, our marketing partners may have different privacy policies and practices than 123inkjets.com. We encourage you to review our marketing partners' privacy policies to further understand their procedures for collecting, using and disclosing your information. We are not responsible for the privacy practices of our marketing partners or any other third parties. If you decide that you would like to discontinue receiving promotional materials from these or any third parties, please contact them directly.

Should you wish to change your preferences regarding the information that you receive from 123inkjets.com or its affiliates, or would prefer that we not share your Personally Identifiable Information with our marketing partners, please refer to the paragraph below entitled **"4. Updating and Correcting Information"** Please note that we are not responsible for retracting your Personally Identifiable Information from any third parties with whom we have shared your information pursuant to the terms and conditions of this Policy.

You acknowledge that this Privacy Policy is part of our Site Terms of Use, and by accessing or using our site, you agree to be bound by all of its terms and conditions. If you do not agree to these terms, please do not access or use this site.

We reserve the right to change this Privacy Policy at any time. Such changes, modifications, additions or deletions shall be effective immediately upon notice thereof, which may be given by means including, but not limited to issuing an email to the email address listed by registered users and posting the revised Policy on this page. You acknowledge and agree that it is your responsibility to maintain a valid email address as a registered user, review this site and this Policy periodically and to be aware of any modifications. Your continued use of the site after such modifications will constitute your: (a) acknowledgment of the modified Policy; and (b) agreement to abide and be bound by the modified Policy.

**VC - 002018**

## 1. Types of Information Collected

In order to better provide you with our numerous services, we collect two types of information about our users: Personally Identifiable Information and Non-Personally Identifiable Information. Our primary goal in collecting information from you is to provide you with a smooth, efficient, and customized experience while using our site.

Personally Identifiable Information: This refers to information that lets us know the specifics of who you are. When you engage in certain activities on this site, such as registering for a membership, ordering a product or service, submitting content and/or posting content in discussion forums or other public areas, entering a contest or sweepstakes, filling out a survey, or sending us feedback, we may ask you to provide certain information about yourself by filling out and submitting an online form. It is completely optional for you to elect to engage in these activities, however, we may ask that you provide us personal information, such as your first and last name, mailing address (including zip code), email address, employer, job title and department, telephone and facsimile numbers, and other personal identifying information. When ordering products or services on the site, you may be asked to provide a credit card number. Depending upon the activity, some of the information we ask you to provide is identified as mandatory and some as voluntary. If you do not provide the mandatory data with respect to a particular activity, you will not be able to engage in that activity.

Non-Personally Identifiable Information: This refers to information that does not by itself identify a specific individual. We gather certain information about you based upon where you visit on our site in several ways. This information is compiled and analyzed on both a personal and an aggregated basis. This information may include the Web site's Uniform Resource Locator (URL) that you just came from, which URL you next go to, what browser you are using, and your Internet Protocol (IP) address. A URL is the global address of documents and other resources on the World Wide Web. An IP address is an identifier for a computer or device on a Transmission Control Protocol/Internet Protocol (TCP/IP) network, such as the World Wide Web. Networks like the Web use the TCP/IP protocol to route information based on the IP address of the destination. In other words, an IP address is a number that is automatically assigned to your computer whenever you are surfing the web, allowing web servers to locate and identify your computer. Computers require IP addresses in order for users to communicate on the Internet.

## 2. Collection Methods and Use of Information

We do not collect any Personally Identifiable Information about you unless you voluntarily provide it to us. You provide certain Personally Identifiable Information to us when you (a) register for our services and register your email address with us; (b) enter sweepstakes or contests sponsored by us or one of our partners; (c) sign up for special offers from selected third parties; (d) send email messages, submit forms or transmit other information by telephone or letter; or (e) submit your credit card or other payment information when ordering and purchasing products and services on our site. We may also collect information from you at other points on our site that state that such information is being collected.

In addition, we may also collect, or our third party ad server and/or content server may collect, certain Non- Personally Identifiable Information. This information is ultimately stored in the form of store categories, and, in some cases, specific URLs. We use your IP address to diagnose problems with our servers, software, to administer our site and to gather demographic information. Our third party ad servers will also provide us with summary, but not individual, reports that will tell us how many ads were presented and clicked upon at out site.

We will primarily use your Personally Identifiable Information to provide our services to you, as required by our agreements with you. We will also use Personally Identifiable Information to enhance the operation of our site, fill orders, improve our internal and marketing partner's promotional efforts, statistically analyze site use, improve our product and service offerings, and customize our site's content, layout, and services. We may use Personally Identifiable Information to deliver information to you and to contact you regarding administrative notices. We may also use Personally Identifiable Information to resolve disputes, troubleshoot problems and enforce our agreements with you, including our Site Terms of Use, Sales Terms and Conditions, and this Private Policy.

## 3. Release of Information

We provide some of our services through contractual arrangements with affiliates, services providers, partners and other third parties. We (and our service partners) use your Personally Identifiable Information to operate our sites and

VC - 002019

to deliver their services. For example, we must release your credit card information to the card-issuing bank to confirm payment for products and services purchased on this site; release your address information to the delivery service to deliver products that you ordered; and provide your address information to third parties that mail catalogs and other physical promotions; and provide order information to third parties that help us provide customer service.

We will encourage our service partners to adopt and post privacy policies. However, the use of your Personally Identifiable Information by our service partners is governed by the privacy policies of those service partners, and is not subject to our control.

Occasionally we may be required by law enforcement or judicial authorities to provide Personally Identifiable Information to the appropriate governmental authorities. We will disclose Personally Identifiable Information upon receipt of a court order, subpoena, or to cooperate with a law enforcement investigation. We fully cooperate with law enforcement agencies in identifying those who use our services for illegal activities. We reserve the right to report to law enforcement agencies any activities that we in good faith believe to be unlawful.

We may also provide Non-Personally Identifiable Information about our customers' sales, traffic patterns, and related site information to third party advertisers, but these statistics do not include any Personally Identifiable Information.

### 4. Updating and Correcting Information

We believe you should have the ability to access and edit the Personally Identifiable Information that you have provided to us. You may change any of your Personally Identifiable Information in your account online at any time by linking to your account in accordance with instructions posted elsewhere on this site. If you prefer, you may also request in writing that we no longer share Personally Identifiable Information with our marketing partners. Once we receive such request, your information will be updated within 7 business days. You may also access and correct your personal information and privacy preferences by writing us at:

123inkjets.com
25 E. Easy Street
Simi Valley, CA 93065

Please include your name, address, and/or email address when you contact us.

We encourage you to promptly update your Personally Identifiable Information if it changes. You may ask to have the information on your account deleted or removed; however, because we keep track of past transactions, you cannot delete information associated with past transactions on this site. In addition, it may be impossible to completely delete your information without some residual information because of backups.

### 5. User Choices on Collection and Use of Information

We may, from time to time, send you email regarding our products and services. Or, at any time you can update your account information to no longer receive such emailings. See Section 4 above.

You also have choices with respect to cookies, as described below. By modifying your browser preferences, you have the choice to accept all cookies, to be notified when a cookie is set, or to reject all cookies. If you choose to reject all cookies some parts of our site may not work properly in your case.

### 6. Security of Information

At our site you can be assured that your Personally Identifiable Information is secure, consistent with current industry standards. The importance of security for all Personally Identifiable Information associated with our user is of utmost concern to us. Your Personally Identifiable Information is protected in several ways. Access by you to your Personally Identifiable Information is available through a password and unique customer ID selected by you. This password is encrypted. We recommend that you do not divulge your password to anyone. In addition, your Personally Identifiable Information resides on a secure server that only selected key personnel and contractors have access to via password. We encrypt your Personally Identifiable Information and thereby prevent unauthorized parties from viewing such information when it is transmitted to us.

Personal information that you provide that is not Personally Identifiable Information also resides on a secure server

**VC - 002020**

and is only accessible via password. Since this information is not accessible from outside our company you will not be asked to select a password in order to view or modify such information.

In order to most efficiently serve you, credit card transactions and order fulfillment are handled by established third party banking, processing agents and distribution institutions. They receive the information needed to verify and authorize your card or other payment information and to process and ship your order.

Unfortunately, no data transmission over the Internet or any wireless network can be guaranteed to be 100% secure. As a result, while we strive to protect your Personally Identifiable Information, you acknowledge that: (a) there are security and privacy limitations of the Internet which are beyond our control; (b) the security, integrity and privacy of any and all information and data exchanged between you and us through this site cannot be guaranteed; and (c) any such information and data may be illegally viewed or tampered with in transit by a third party.

### 7. Cookies

When you use our site we will store cookies on your computer in order to facilitate and customize your use of our site. A cookie is a small data text file, which a Web site stores on your computer's hard drive (if your Web browser permits) that can later be retrieved to identify you to us. Our cookies store randomly assigned user identification numbers, the country where you are located, and your first name to welcome you back to our site. The cookies make your use of the site easier, make the site run more smoothly and help us to maintain a secure site. You are always free to decline our cookies if your browser permits, but some parts of our site may not work properly in that case.

We may use an outside ad serving company to display banner advertisements on our site. As part of their service, they will place a separate cookie on your computer. We will not provide any third-party ad server with any of your Personally Identifiable Information or information about your purchases. We and our third party ad server will collect and use Non-Personally Identifiable Information about you, such as your IP address, browser type, the server your computer is logged onto, the area code and zip code associated with your server and whether you responded to a particular ad. Other advertisers may also place banner ads on our site in the same manner as above, but we will not disclose any Personally Identifiable Information to them.

### 8. Privacy Policies of Third Party Sites

Except as otherwise discussed in this Privacy Policy, this document only addresses the use and disclosure of information we collect from you. Other sites accessible through our site have their own privacy policies and data collection, use and disclosure practices. Please consult each site's privacy policy. We are not responsible for the policies or practices of third parties. Additionally, other companies which place advertising on our site may collect information about you when you view or click on their advertising through the use of cookies. We cannot control this collection of information. You should contact these advertisers directly if you have any questions about their use of the information that they collect.

### 9. Miscellaneous Privacy Issues

You must be at least 18 years old to have our permission to use this site. Our policy is that we do not knowingly collect, use or disclose Personally Identifiable Information about visitors that are under 18 years of age.

You should also be aware that when Personally Identifiable Information is voluntarily disclosed (i.e. your name, email address, etc.) in the discussion forums or other public areas on this site, that information, along with any information disclosed in your communication, can be collected and used by third parties and may result in unsolicited messages from third parties. Such activities are beyond our control and this Policy does not apply to such information. Any submissions to chat rooms or other public areas on this site are accepted with the understanding that they are accessible to all third parties. If you do not want your comments to be viewed by third parties, you are advised not to make any submissions. Ultimately, you are solely responsible for maintaining the secrecy of your password and/or account information. Please be careful and responsible whenever you're online.

If you have any questions about this Privacy Policy, the practices of this site, or your dealings with this site, please contact us by sending a letter to:

123inkjets.com
Attn: Privacy Compliance Officer

**VC - 002021**

Printer Ink Cartridges, Laser Toners, Ribbons and Inkjet Printer Cart...   file:///E:/Request%20No%205%20and%206/Printer%20Ink%20Cart...

25 E. Easy Street
Simi Valley, CA 93065

You may also contact us by email at privacy@123inkjets.com.

| My Account Login | 1 Year Guarantee | Your Privacy Rights | Credit Card Orders | Feedback |
| My Order Status | Free Shipping | Terms & Conditions | Order by Check | Email Customer Service |
| Customer Service | Easy Returns | Cookies | Fax Orders | |
| F.A.Q.'s | Secure Shopping | Anti-Spam Policy | Sales Tax | Affiliate Program |

BizRate
Customer
Certified
(GOLD) Site

123inkjets.com, 25 E. Easy St., Simi Valley, CA 93065

Terms & Conditions | © Copyright 1998-2006 123inkjets.com | Site Feedback

Visa Accepted.
Mastercard Accepted.
Discover Accepted.
American Express Accepted.Paypal Accepted - New!

*Free shipping does not apply to non-ink promotional items that state a S/H charge. All gift offers and promotional items are subject to availability and 123inkjets reserves the right to change the terms of any such offer or promotions without notice.
** Apple®, HP®, IBM®, Lexmark®, Canon®, Epson®, Xerox® and other manufacturer brand names and logos are registered trademarks of their respective owners who have no association with or make any endorsement of the products or services provided by 123inkjets.com. Any use of a brand name or model designation for a non-OEM cartridge is made solely for purposes of demonstrating compatibility. Coupons are not valid for OEM cartridges, solid ink, or media products.
UPS and the UPS brandmark are trademarks that are used with permission by the owner, United Parcel Service of America, Inc. All rights reserved.

VC - 002022

COPY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | CV08-01711 MMM (RZx) |
| v. | |
| ValueClick, Inc., Hi-Speed Media, Inc., and E-Babylon, Inc., | |
| DEFENDANT(S). | **SUMMONS** |

TO:   DEFENDANT(S):  ValueClick, Inc., Hi-Speed Media, Inc., and E-Babylon, Inc.

     A lawsuit has been filed against you.

     Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney,  Gary Plessman, Assistant U.S.Attorney , whose address is  Room 7516, Federal Building, 300 North Los Angeles St., Los Angeles, CA 90012 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.   You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __MAR 1 3 2008__

By: _____

NATALIE LONGORIA

Deputy Clerk

*(Seal of the Court)*

1198

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                          SUMMONS

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

UNITED STATES OF AMERICA

**DEFENDANTS**

ValueClick, Inc., Hi-Speed Media, Inc., and E-Babylon, Inc.

**(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):
N/A

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):
Los Angeles County

**(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
THOMAS P. O'BRIEN, United States Attorney
GARY PLESSMAN, AUSA, Civil Fraud Chief
300 North Los Angeles Street, Room 7516, Federal Building
Los Angeles, CA 90012; PH: 213-894-2474; FAX: 213-894-2380

Attorneys (If Known)

M. Sean Royall
Gibson, Dunn & Crutcher
2100 McKinney Ave, Suite 1100
Dallas, TX 75201; Phone: (214) 698-3256; Fax: (214) 571-2923

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** 2.9 million civil penalty negotia■

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Action for injunctive relief and civil penalties ($2,900,000 non-suspended) for violations of Section 5 of the Federal Trade Commission Act, 15 U.S.C. Section 45(a) and the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM), 15 U.S.C. Section 7701 et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities /Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | | **SOCIAL SECURITY** |
| ☑ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:**   Case Number: _____   **CV08-01711**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑ No  ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☑ Check here if the U.S. government, its agencies or employees is a named plaintiff.

UNITED STATES OF AMERICA, county n/a

List the California County, or State if other than California, in which EACH named defendant resides.  (Use an additional sheet if necessary)
☐  Check here if the U.S. government, its agencies or employees is a named defendant.

ValueClick, Inc., Hi-Speed Media, Inc., and E-Babylon, Inc:  Los Angeles County

.

List the California County, or  State if other than California, in which EACH claim arose.  (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.

Nationwide

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _Gary Plessman_ _____  Date _3/13/08_

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Ralph Zarefsky.

The case number on all documents filed with the Court should read as follows:

## CV08- 1711 MMM (RZx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY